UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| THE SEASONS HOMEOWNERS ASSOCIATION, INC., <br><br>                    Plaintiff, <br><br> vs. <br><br> RICHMOND AMERICAN HOMES OF NEVADA, INC., <br><br>                    Defendant. | Case No. 2:11-cv-01875-RCJ-PAL <br><br> **ORDER** <br><br> (Mot. Compel Arbitration - Dkt. #25) |

The court conducted a hearing on Defendant Richmond American Homes of Nevada, Inc.'s ("Richmond") Motion to Compel Arbitration (Dkt. #25) on June 12, 2012, which was referred to the undersigned for a decision pursuant to 28 U.S.C. § 636(b)(1)(A), and LR IB 1-3.[1]  Raymond Babaian and Prescott Jones appeared on behalf of Richmond, and J. Randall Jones, Troy Isaacson and Michael Gayan appeared on behalf of Seasons Homeowners Association, Inc., ("Seasons").  The court has considered the Motion, supporting affidavits, Seasons' Opposition (Dkt. #35), the Supplemental Affidavit of Raymond Babaian (Dkt. #42), Richmond's Reply (Dkt. #43), and the arguments of counsel at the hearing.

**BACKGROUND**

**I.     Procedural History**

The Complaint in this case was filed in state court and removed (Dkt. #1) on December 6, 2011. Seasons is a Nevada homeowners association that filed the complaint in its representative capacity on

---

[1] At the time this motion was referred to the undersigned for a decision, it was assigned to the Honorable Kent J. Dawson.  Chief Judge Robert C. Jones subsequently reassigned this case to himself. *See* Minute Order in Chambers (Dkt. #45).

behalf of the homeowners of 380 residential units constructed by Richmond between 2001 to 2004. Seasons alleges Richmond built the homes using high-zinc yellow brass plumbing components that are corroding and disintegrating. Seasons served Richmond with a notice pursuant to NRS 40.645 on March 17, 2011, and provided expert reports detailing the allegedly defective construction resulting from the use and incorporation of the yellow brass plumbing components. Richmond denied responsibility for the defects. The parties conducted an unsuccessful mediation in August 2011, as required by NRS 40.680(1). This lawsuit followed. Richmond's Statement of Removal (Dkt. #5) indicates the court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) and under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(A) and 28 U.S.C. § 1367.

## II. The Parties' Positions

### A. Richmond's Motion to Compel Arbitration

In the current motion, Richmond seeks to compel the original homeowners who purchased units within the Seasons development, and who entered into Purchase and Sale Agreements ("PSAs") containing arbitration provisions, to individually arbitrate their construction defect claims. Each original homeowner entered into a PSA that included an Arbitration of Disputes provision. The PSAs also contain a provision requiring mediation of disputes between the purchaser and seller before resorting to arbitration or court action. Paragraph 25 of the PSA provides:

> 25. **Arbitration of Disputes**. Except as set forth in the Warranty Document, Purchase and Seller agree that any and all disputes, claims and/or controversies in law or equity between Purchaser and Seller arising out of, related to or in any way connected with the Property, this Agreement, or any resulting transaction which were not settled through mediation shall be decided by neutral, binding arbitration and not by court action, except as provided by Nevada law for judicial review of arbitration proceedings. The arbitration shall be conducted in accordance with the rules of the American Arbitration Association. In all other respects, the arbitration shall be conducted in accordance with the Nevada Rules of Civil Procedure as set forth in the Nevada Revised Statutes. The arbitrator shall not be empowered or authorized to add to, subtract from, or delete or in any other way modify, the terms of this Agreement. Judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The parties shall have the right to discovery in accordance with Nevada Rules of Civil Procedure.
>
> NOTICE: BY EXECUTING THIS AGREEMENT YOU ARE AGREEING TO HAVING ANY DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' SECTION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY NEVADA

LAW AND YOU ARE GIVING UP ANY RIGHT YOU MAY POSSESS
TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL.

*See* PSA attached to Richmond's Reply (Dkt. #43) as Exhibit C at ¶25.

Richmond argues that the construction defect claims involved in this suit fall within the scope of the arbitration provisions of the PSAs.  Seasons' Chapter 40 notice alleges that Richmond installed defective yellow brass plumbing fittings and other high-zinc plumbing components in the Seasons development's homes.  It further contends that these high-zinc brass plumbing system components are corroding when exposed to Las Vegas' water due to a well-known, documented, and studied corrosion process called dezincification.  The complaint asserts similar facts and alleges claims for negligence, breach of express and implied warranties, and strict liability for use of defective high-zinc plumbing fitting and components.  Seasons seeks to recover damages caused by the dezincification of these plumbing parts on behalf of individual homeowners.

Richmond argues that the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq., mandates enforcement of the arbitration provisions of the parties' PSAs.  All prerequisites for an order compelling arbitration under the FAA have been met, and this action should be stayed pending the conclusion of arbitration.  Richmond also claims that the homeowners must participate in individual arbitrations, and because Seasons has no interest in the homes, it may not arbitrate on the homeowners' behalf.  The arbitration provision of the PSAs makes clear that arbitration is only permitted between Richmond as seller and the individual homeowners as purchasers.  Seasons was not and is not a party to any of the PSAs, and allowing it to participate in a representative capacity on behalf of the homeowners is inconsistent with the FAA's overarching purpose of ensuring enforcement of arbitration agreements according to their terms.  The express provisions of Paragraph 25 of the PSA refers to a single purchaser and a single seller.  It does not authorize a homeowners association to represent a purchaser or group of purchasers.  The PSAs do not authorize class action arbitration.

Richmond vehemently disputes that Seasons has standing to pursue the construction defect claims in a representative capacity.  However, even if it does, Richmond argues that a non-signatory is bound by the terms of an arbitration agreement where the non-signatory's claims are asserted solely on

/ / /

3

behalf of a signatory to an arbitration agreement. Thus, the intent of the agreement is clear, and the court should compel binding arbitration between the individual purchasers and Richmond as seller.

Finally, Section 2 of the FAA makes arbitration agreements "valid, irrevocable, and enforceable" as written "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. There are no grounds precluding the enforcement of the parties' arbitration agreement, and the court should grant the motion to compel arbitration.

### B. Seasons' Response

Seasons opposes the motion, arguing Richmond removed this case under CAFA and now seeks to compel non-party individual homeowners to arbitrate their individual defect claims against Richmond. Seasons argues Richmond has not met its burden of proving a valid and enforceable arbitration agreement exists, or which of the individual homeowners is bound by the alleged agreement to arbitrate. Alternatively, if the court finds that a valid and enforceable arbitration agreement exists, the court should enforce the agreement as written and deny Richmond's request to rewrite the agreement. Specifically, the arbitrator should decide who is a party to the agreement and the procedures to be followed during arbitration.

Seasons contends that under Nevada law the burden is on the party seeking arbitration to establish the existence of a valid and enforceable contract. This court should not assert jurisdiction over this Nevada law-based declaratory action because none of the individual home owners' claims meet the $75,000.00 diversity jurisdiction threshold established by 28 U.S.C. § 1332. By seeking an order compelling individual homeowners to arbitrate their individual claims with Richmond, Richmond admits that aggregation of individual claims to meet this court's jurisdictional threshold is improper. Granting the relief requested would destroy this court's subject matter jurisdiction. Richmond's Statement Regarding Removal (Dkt. #5) asserts that the court has jurisdiction under CAFA, and the amount in controversy meets the requirement of 28 U.S.C. § 1332 because each of the 380 homes in the development was allegedly damaged in the approximate amount of $15,000.00, or $5,700,000.00 in the aggregate, which exceeds the diversity jurisdictional threshold. Seasons emphasizes that this is not a class action lawsuit. Rather, it filed the complaint in its representative capacity as a homeowners association on behalf of all 380 homeowners. Thus, it is inconsistent for Richmond to argue that

Seasons' claims are a common interest or class claim for jurisdictional purposes under CAFA, but not for purposes of arbitration.

Additionally, claims of unnamed class members cannot serve as a basis for satisfying the amount in controversy requirement for diversity jurisdiction. Seasons argues that the court lacks subject matter jurisdiction because the individual homeowners are not parties to this case. Seasons' opposition acknowledges the possibility that arbitration agreements exist between Richmond and unnamed homeowners, and those agreements are valid and include the requirement to arbitrate construction defect claims. However, the motion argues that these PSAs have not been disclosed to the court, and Richmond has not named or served any of the individual homeowners who signed them. Because Richmond seeks a judgment against individual homeowners, they are indispensable parties to this action.

During oral argument, counsel for Seasons conceded that although the motion to compel arbitration and supporting materials contain some errors, defense counsel made the PSAs at issue here available for inspection and copying. Additionally, 107 of the original homeowners signed PSAs containing identical arbitration provisions. Finally, Seasons does not dispute the authenticity of the PSAs.

Seasons also maintains that the PSA's arbitration clause is procedurally and substantively unconscionable under Nevada law. Specifically, it is procedurally unconscionable because it does not clearly notify a purchaser that he or she is waiving important rights under Nevada law. The arbitration clause is not separately signed or initialed, unlike other clauses in the PSA which require a separate acknowledgment, either by initialing or checking a box. Paragraph 25 is typed in the same "tiny font" as the rest of the contract and is not set apart from other text in the arbitration agreement except for the second half of the clause, which is written in capital letters. Other paragraphs of the PSA also have capital lettering. There is no evidence that any purchaser had an opportunity to negotiate any term of the contract. The warranty document has the same unconscionability problems as the arbitration agreement. It places significant pre-mediation notification requirements on the purchaser and differs in significant respects from the PSA. The conflicting provisions in the arbitration clause of the PSA and the warranty document create ambiguity about whether an arbitration required by the warranty provider

would include, overlap with, or be separate from arbitration with Richmond. The arbitration required by the warranty document does not specify whether the American Arbitration Association ("AAA") rules or the Nevada Rule of Civil Procedure Rules apply to the contemplated arbitration.

Similarly, Seasons maintains the arbitration provision of the PSA is substantively unconscionable because it is one-sided like the contract found unconscionable by the Nevada Supreme Court in *Gonski v. Second Judicial Dist. Court,* 245 P.3d 1164, 1169 (Nev. 2010). It does not specify who is responsible for the arbitrator's fees, how fees will be computed, what the fees will cover, and whether arbitration fees may be shifted to the prevailing party. This one-sided omission gives Richmond, the party with deeper pockets, an advantage over the homeowner. The mediation clause contained in Paragraph 24 of the PSA makes no distinction between the mediation required by Chapter 40 and mediation required by the PSA. Additionally, failure to arbitrate under the PSA purports to waive fees allowed under NRS Chapter 40. In *Gonski*, the Nevada Supreme Court found a similar waiver of fees provision substantively unconscionable because it implicitly waived the homeowners' statutory rights under NRS Chapter 40.

Seasons also contends that the fee-shifting provisions in the warranty document and Paragraph 25 of the PSA demonstrate the contracts are oppressive to individual homeowners, who may not understand the specific procedures involved in Chapter 40, while a sophisticated builder like Richmond does. Seasons argues that enforcing the arbitration clause may also violate NRS Chapter 116–the Uniform Common Interest Ownership Act–which provides specific remedies for defects. In *Gonski,* the Nevada Supreme Court was concerned that an arbitration provision might damage homeowners' statutory rights, and the court indicated that denial of Chapter 40 rights violates Nevada's public policy. To the extent Richmond seeks to limit its liability for defects excluded from arbitration through the warranty document, the Nevada Supreme Court's decision in *Gonski* mandates that the arbitration agreement be declared unenforceable.

Finally, Seasons argues that if the court finds the arbitration clause of the PSA is valid and enforceable, the court should deny Richmond's request that Seasons be prohibited from representing the homeowners in arbitration. Plaintiff relies on the United States Supreme Court's decision in *Greentree Financial Corp. v. Bazzle*, 539 U.S. 444, 452-50 (2003), to support its argument. There, the plaintiff

argued that the arbitration clause used singular rather than plural terms, and therefore, class arbitration was foreclosed. Plaintiff contends the Supreme Court held that the decision of whether arbitration should proceed on a classwide basis was for the arbitrator, not the court. Granting Richmond's request would run afoul of the Supreme Court's decision in *Bazzle*. The PSA neither mandates nor forbids class-representative arbitration. However, it specifically provides that arbitration shall be conducted in accordance with the rules of the AAA and the Nevada Rules of Civil Procedure. The AAA rules include provisions for representative or class arbitration. The Supreme Court has held that where an arbitration agreement mandates application of state rules, using the FAA to prevent enforcement of those rules would be inimical to the purpose of arbitration laws because it would force the parties to arbitrate in a manner contrary to their agreement. Thus, Richmond's request that the court order individual arbitrations would require the court to rewrite the arbitration agreement.

### C.     Richmond's Reply

Richmond replies that Seasons conflates the issue of jurisdiction and arbitration. Seasons does not dispute that the claims here are covered by the binding arbitration agreement or that the FAA applies. Moreover, Seasons does not dispute that the underlying transactions involve interstate commerce. Seasons has not challenged the existence of a written arbitration agreement or denied that the homeowners refuse to arbitrate. The FAA requires that doubts about the scope of arbitrable issues be resolved in favor of arbitration, and the court should compel the original individual homeowners to arbitrate their claims individually. Because Seasons brought this suit in its representative capacity, the individual homeowners are subject to any order of this court compelling arbitration.

Richmond's original motion sought to compel 133 homeowners to arbitrate. However, Seasons disputes whether the current legal owners of twenty-six homes were the original purchasers. To simplify matters, Richmond seeks to compel arbitration with the 107 homeowners who are undisputed original purchasers. Richmond and Seasons agreed that Richmond would make the signed PSAs available for inspection by Seasons' counsel because the PSAs were not attached to the motion. During oral argument, counsel for Richmond represented that the signed PSAs were produced as promised. Seasons' counsel acknowledged that the original PSAs were produced, and conceded that it had no concerns relating to the authenticity of the PSAs as to these homeowners.

Richmond contends that Seasons has not established that the arbitration clause in the PSAs is procedurally or substantively unconscionable. It argues that the arbitration provision was conspicuously presented, and it advised homeowners that they waived their right to a jury trial. This specific provision is set out in capital letters. Seasons does not allege that any homeowners were coerced or failed to understand the PSA or that any homeowners were prevented from seeking legal advice. Richmond claims there is a strong presumption that federal law applies to rules for arbitration. In *Doctor's Association, Inc. v. Casarotto*, 517 U.S. 681, 684 (1996), the Supreme Court held that the FAA preempts a state rule that adds conditions of enforceability beyond the FAA's requirements. Therefore, the court should focus on the federal law, rather than state law, cited in Seasons' opposition.

However, Richmond maintains that the Nevada Supreme Court recognizes a presumption of arbitrability and has held that a party opposing arbitration must establish a defense to its enforcement, and arbitration clauses will only be defeated when they are both procedurally and substantively unconscionable. Under Nevada law, an arbitration clause is procedurally unconscionable if a party lacks a meaningful opportunity to agree to its terms either because of unequal bargaining power or because the provision and its effect are not readily apparent. Procedural unconscionability involves the use of fine print or complicated, incomplete, or misleading language that fails to inform a reasonable person of the language's consequences. In *Gonski,* the Nevada Supreme Court found an arbitration agreement unconscionable because it was inconspicuous and did not clearly put the homeowners on notice they were waiving rights under Chapter 40.

The arbitration agreement here is distinguishable from the one criticized by the Nevada Supreme Court in *D.R. Horton* and *Gonski* because it contains none of the deficiencies at issue in those cases. Here, the PSAs have individually-tailored terms, such as pricing, location, and options. These individual terms belie Seasons' arguments that the PSAs were offered on a take-it-or-leave-it basis. The language of the arbitration clause is clear and unambiguous and informs purchasers that the agreement to arbitrate was voluntary. Seasons has not shown any purchasers were coerced into signing a PSA. The court need not analyze Seasons' Chapter 40 arguments because the arbitration agreement does not waive any rights, obligations, or liabilities imposed by Chapter 40.

///

Finally, Richmond argues that the court should decide the issue of class arbitration. Seasons challenges the arbitration clause, not the enforceability of the PSA as a whole. Thus, federal law requires the court, rather than the arbitrator, to decide whether arbitration should be compelled between individual purchasers or as a class. Seasons concedes this case was not filed as a class action, and although the agreement to arbitrate "references the AAA and NRCP, it does not specifically mention the Supplemental Class Arbitration Rules." Reply at 17. Because the language of the arbitration provision does not mention class or representative arbitration, individual arbitrations should be compelled.

## **DISCUSSION**

### I. **Jurisdiction**

Although Seasons' opposition asserts the court lacks subject matter jurisdiction, it has not filed a motion to dismiss or remand. The opposition focuses on the lack of jurisdiction under CAFA to emphasize that this case was not filed as a class action, but rather, Seasons filed the complaint in its representative capacity on behalf of 380 homeowners. Plaintiff also argues that Richmond may not inconsistently argue that the claims of the individual homeowners may be aggregated for one purpose, i.e., federal jurisdiction, but not for purposes of allowing a single arbitration with the homeowners association representing each of the original purchasers in its representative capacity.

In a related case, *Greystone Nevada, LLC v. Anthem Highlands Community Association,* Case No. 2:11-cv-01424-RCJ-CWH, the district judge addressed these jurisdictional issues. He found that individual homeowners' claims may be aggregated to satisfy the amount in controversy requirements, and diversity exists because the homeowners' claims are properly considered the homeowners association's claims for purposes of diversity jurisdiction. In *Greystone*, as here, no individual homeowners' claims are sufficient to satisfy the amount in controversy requirement. Similarly, in *Greystone*, the homeowners association served Chapter 40 notices concerning the homeowners' construction defect claims on behalf of all homeowners. Under Nevada law, a homeowners association has statutory authority to represent homeowners in these types of actions. *See* NRS § 116.31088(1).

Citing *Long & Foster Real Estate, Inc. v. NRT Mid-Atlantic, Inc.,* 357 F.Supp. 2d 911, 919-20 (E.D. Va. 2005), the district judge found in *Greystone* that when multiple putative plaintiffs assign their

9

claims to a third-party assignee, the assignee may aggregate those claims to satisfy the jurisdictional amount in a diversity action because an assignee is a real party in interest under Rule 17 of the Federal Rules of Civil Procedure. Thus, in *Greystone*, the homeowners association was the real party in interest for aggregated claims brought under its statutory authority. The claims of the individual homeowners were properly aggregated for purposes of diversity jurisdiction, and federal subject matter jurisdiction existed. In the absence of any controlling authority to the contrary, this court is persuaded by his reasoning. There is no dispute that the aggregate amount of the individual homeowners' claims exceed the diversity jurisdiction threshold of 28 U.S.C. § 1332. The court has diversity jurisdiction because the individual claims of each of the 380 homeowners may be aggregated based on Seasons' statutory authority to pursue those claims on the homeowners' behalf.

## II.     The Federal Arbitration Act

### A.     History and Purpose

Congress enacted the FAA in 1925 to overcome judicial resistance to arbitration. *A.T.& T. Mobility, LLC v. Concepcion,* – U.S. –, 131 S.Ct. 1740, 1744 (2011) (citing *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008)); *Buckeye Check Cashing, Inc., v. Cardegna,* 526 U.S. 440, 441 (2006). In doing so, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 466 U.S. 1, 10 (1984). Because the FAA creates a strong presumption in favor of enforcing arbitration agreements, the Supreme Court has stated that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Shearson/Am. Express, Inc. v. McMahon,* 482 U.S. 220, 226-27 (1987) (arbitration agreements should be rigorously enforced); *Moses H. Cone Mem'l Hosp* 460 U.S. 1, 24-25 (1983) (federal policy favors arbitration).

### B.     Section 2 of the FAA

Section 2 of the FAA is the "primary substantive provision of the act." *Concepcion*, 131 S.Ct. at 1745 (citing *Moses H. Cone,* 460 U.S. at 24). It provides, in relevant part, as follows:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid,

10

     irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

  The Supreme Court has described this provision as reflecting a "liberal federal policy favoring arbitration." Section 2 also reflects the "fundamental principle that arbitration is a matter of contract." *Id*. (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. ___, 130 S.Ct. 2772, 2776 (2010). Consistent with these principles, courts must place arbitration agreements on an equal footing with other contracts. *Id.* (citing *Buckeye Check Cashing,* 546 U.S. at 400, 443). Arbitration agreements must be enforced according to their terms. *Id*. (citing *Volt Information Sciences, Inc. v. Board of Trustees of Leland Sanford Jr., Univ.,* 489 U.S. 468, 478, (1989)).

  Seasons does not dispute that the construction defect claims involved in this case fall within the provisions of the arbitration agreement, or that the FAA applies. Seasons' opposition to the motion to compel arbitration took the position Richmond had not met its burden of proving the existence of valid and enforceable arbitration agreements, or which of the individual homeowners would be bound by the agreements to arbitrate. However, during oral argument, counsel for Plaintiff conceded that Richmond had produced signed PSAs for 107 of the original homeowners. Counsel for Plaintiff conceded that each of these 107 original homeowners signed PSA containing identical arbitration provisions. However, Seasons asked that the court deny the motion to compel arbitration arguing the arbitration clause of the PSA is procedurally and substantively unconscionable under Nevada Law.

  **C. The Savings Clause**

  The last sentence of Section 2 authorizes the court to find arbitration agreements unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts have generally referred to this language as the savings clause. It permits courts to invalidate arbitration agreements using "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Id.* at 1746 (citing *Doctors Associates, Inc.* 517 U.S. at 687).

  The savings clause preserves generally applicable contract defenses, not only those that apply to arbitration agreements. State law rules that prohibit arbitration of a particular type of claim are preempted by the FAA. *Id.* at 1747. State rules that are inconsistent with the FAA are also preempted. *Id.* at 1747-48. Additionally, state rules that stand as an obstacle to the accomplishment of the FAA's

goals are preempted. *See Preston v. Ferrer,* 552 U.S. 346 (2008). In *Preston*, the Supreme Court found a state law requiring exhaustion of administrative remedies was preempted by the FAA because it frustrated a primary purpose of the FAA: achieving streamlined proceedings and expeditious results. *Id.* at 359. Furthermore, rules that have a disproportionate impact on arbitration are also preempted by the FAA. *Concepcion,* 131 S.Ct. at 1747. For example, state rules classifying the following arbitration agreements as unconscionable would have a disproportionate impact on arbitration: those that do not abide by the Federal Rules of Evidence, disallow jury trials, or require exhaustion of administrative remedies. *Id.* at 1747. In essence, the savings clause may not be applied in a manner that disfavors arbitration.

Similarly, in *Concepcion*, the Supreme Court held that California's *Discover Bank* rule, which allowed any party to a consumer contract of adhesion to demand classwide arbitration, was preempted by the FAA. 131 S.Ct. at 1750. Although California's *Discover Bank* rule applied to all contracts, not only arbitration agreements, the Supreme Court held the rule interfered with arbitration and allowed a party to demand classwide arbitration, even where the arbitration agreement was silent on the issue. The high Court found the *Discover Bank* rule was inconsistent with the FAA for several reasons. First, requiring class arbitration rather than bilateral arbitration "sacrifices the principal advantage of arbitration–its formality–and makes the process slower, more costly, and more likely to general procedural morass than final judgment." *Id*. at 1751. Second, class arbitration requires more procedural formality. *Id.* Third, class arbitration greatly increases risks to defendants. *Id*. at 1752.

    **D.**    **Nevada Law on Unconscionability**

Seasons argues that the arbitration clause of the PSA is procedurally and substantively unconscionable under Nevada law, and therefore unenforceable under the FAA. Disputes concerning whether parties are bound by an arbitration clause raise threshold questions of arbitrability for the court to decide. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). In the Ninth Circuit, the court must address an unconscionability defense to the enforcement of an arbitration provision. *See, e.g.*, *Nagrampa v. MailCoups, Inc.,* 469 F.3d 1257, 1263-64 (9th Cir. 2006) (en banc)*.* Neither side disputes this. Unconscionability is a generally applicable contract defense that may render an agreement to arbitrate unenforceable. *Chalk v. T-Mobile, USA*, 560 F.3d 1087, 1092 (9th Cir. 2009).

Because the FAA creates a strong presumption in favor of enforcing arbitration agreements, the Supreme Court has stated that arbitration agreements should be rigorously enforced, and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Shearson-Am. Express,* 482 U.S. at 226-27.

Nevada law also recognizes that "strong public policy favors arbitration because arbitration generally avoids the higher costs and longer time periods associated with traditional litigation." *D.R. Horton v. Green*, 96 P.3d 1159, 1162 (Nev. 2002). Under Nevada law, a contract provision is unenforceable due to unconscionability only if it is both procedurally and substantively unconscionable. *Id.* The party opposing arbitration has the burden of showing the arbitration agreement is both procedurally and substantively unconscionable. *Id*. An arbitration clause is procedurally unconscionable under Nevada law when a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract. *Id.* at 1162. Substantive unconscionability "focuses on the one-sidedness of the contract terms." *Id*. at 1162-63. The Nevada Supreme Court applies a sliding scale in evaluating whether both procedural and substantive unconscionability invalidate an arbitration clause. Less evidence of substantive unconscionability is required in cases involving great procedural unconscionability. *Id*, at 1162. The reverse is also true. Less evidence of procedural unconscionability is required in cases involving great substantive unconscionability. *Gonski*, 245 P.3d at 1169.

Seasons relies on both *D.R. Horton* and *Gonski* to support its arguments that the arbitration clause here is both procedurally and substantively unconscionable. In *D.R. Horton*, the Nevada Supreme Court held an arbitration clause in a two-page sales agreement between a homeowner and developer was unconscionable and unenforceable. The Court found the contract was procedurally unconscionable because it was difficult to read, and the arbitration clause was on the back page, while the signature lines were on the front page. Nothing drew attention to the arbitration provision, and it was typed in extremely small font. There was evidence in the record that Horton's sales agent downplayed the significance of the arbitration agreement and made representations that these were standard provisions. Additionally, even if purchasers saw and read the arbitration provision, they

would not be put on notice that they were waiving important rights under Nevada law, specifically, the right to a jury trial and construction defect remedies allowed under Nevada law including the right to recover attorneys fees and damages proximately caused by the construction defect.

The Nevada Supreme Court found the arbitration clause in *D.R. Horton* was substantively unconscionable because it contained a $10,000.00 liquidated damages penalty for refusing to arbitrate and required that each party pay equally for the costs of arbitration. The court agreed with a Ninth Circuit decision, finding that an agreement lacking a "modicum of bilaterality" is substantively unconscionable. The court found the arbitration provision was one-sided because it contained a liquidated damages provision which penalized the homeowners if they refused to arbitrate, but not Horton. Although this provision was not "overwhelming," it established substantive unconscionability when considered with the great procedural unconscionability. The court also found that Horton's failure to disclose potential arbitration costs was a factor to evaluate in determining substantive unconscionability. However, the court acknowledged that the absence of language disclosing the potential arbitration costs and fees, standing alone, may not render an arbitration provision unenforceable.

In *Gonski*, the Nevada Supreme Court also found two arbitration clauses in a purchase agreement and limited warranty agreement for the purchase of homes were procedurally and substantively unconscionable, and therefore unenforceable for a variety of reasons. The plaintiffs paid a $10,000.00 deposit to join a lottery system to purchase a home. A few days later, they were notified of an available residence and instructed to come to the office in five days. According to the Gonskis, when they arrived at the office, several other people were waiting and the Gonskis were handed a stack of twenty-five pre-printed forms, totaling over 469 pages. The evidence in the record demonstrated that the purchasers were not made fully aware of or given an opportunity to become aware of the provisions' terms. The arbitration clause was inconspicuous and did not call the purchasers' attention to important rights they were waiving under Nevada law, such as the right to jury trial and the right to recover NRS Chapter 40 attorneys fees and statutory damages. These facts, coupled with the circumstances of signing the documents, amounted to procedural unconscionability, although the court found the procedural unconscionability was not "overwhelming."

The Nevada Supreme Court also found that the arbitration expenses clause in the purchase agreement was misleading regarding expenses under the limited warranty and one-sided. Under the limited warranty, the purchasers were not merely required to split fees but had to pay them up front. The court found the limited warranty's arbitration provision was substantively unconscionable because it required the purchasers to pay the initial arbitration costs. The documents failed to mention the potentially high costs of arbitration. Although that failure alone did not amount to substantive unconscionability, under the limited warranty, the plan administrator determined the arbitration organization. Thus, the purchasers "were apparently unable to estimate potential costs at the time of signing, since they had to ask the plan administrator for a copy of the applicable arbitration rules." 245 P.3d at 1171. The court also found the arbitration provision of the purchase agreement was substantively unconscionable because it limited NRS Chapter 40's construction dispute provisions to defects covered by the limited warranty. The court held the provision was substantively unconscionable because it attempted to avoid Chapter 40 liability and violated public policy. The court concluded that the procedural unconscionability was "slight," but the failure to adequately address the arbitration costs and disregard of NRS Chapter 40 rights strongly indicated substantive unconscionability. The court therefore concluded the arbitration clauses were invalid and unenforceable.

Unlike the arbitration provisions in *D.R. Horton*, the PSA's arbitration clause in this case is not buried on the back page in smaller font than the rest of the contract. Each paragraph of the PSA contains a heading in bold and capital letters, including Paragraph 25, which is entitled "Arbitration of Disputes." The first section of Paragraph 25 is in the same font size as thirty-six of the thirty-seven paragraphs of the PSA. The second section of Paragraph 25 is in capital letters in larger font size. Only Paragraph 2(D) and Paragraph 36 have the same capital letter and font size as the second section of Paragraph 25. Paragraph 2(D) informs the purchaser in capital letters and larger font size that the purchase is not required to use any mortgage lender designated by the seller as a condition of the purchase. Paragraph 36 is entitled "Purchaser's Acknowledgment" and contains standard language that the purchaser has read the entire agreement, the agreement is the entire agreement between the parties, and that no agreements, promises, or warranties except those expressly contained in the PSA have been

///

made by the seller or its sales person.  The Arbitration of Disputes clause in the PSAs is not buried or inconspicuous.  It is more prominently displayed than the vast majority of the paragraphs of the PSA.

Unlike *Gonski*, nothing in the record suggests that the purchasers were given a stack of pre-printed forms to read in a short time, or told others would make the purchase if they were unwilling to sign.  Seasons does not claim that Richmond's sales representatives downplayed the significance of the arbitration clause.  The record does not support a finding that the PSAs were offered on a take-it-or-leave-it basis or were contracts of adhesion.  In fact, the exemplar PSA attached to the motion illustrates that a purchaser struck a provision of Paragraph 2(B) which would have allowed the seller to retain the purchaser's deposit as liquidated damages.

Seasons claims that inconsistencies between the PSA and the warranty render the arbitration agreement procedurally unconscionable because the warranty document (a) places significant pre-mediation notification requirements on the homeowner, (b) requires the homeowner to begin arbitration by giving written notice to the administrator but not the builder, and (c) does not mention whether the AAA rules or Nevada Rules of Civil Procedure apply.  The warranty requires the purchaser to provide the administrator with information needed to process a warranty request and to cooperate with the administrator's mediation, inspection, and investigation of the warranty request.  The court finds that these are neither unreasonable nor onerous requirements.  Arbitration is initiated when the purchaser gives the administrator written notice of the purchaser's request for arbitration of an unresolved warranty issue.  The arbitration clause contains a reference to binding arbitration under the FAA and gives the arbitrator authority to award the cost of arbitration fees to any party or to split it among the parties to the arbitration.  The failure to mention whether the AAA rules or the Nevada Rules of Civil Procedure apply to a warranty dispute does not render the effects of the arbitration clauses unascertainable.  In short, the court finds Seasons has not met its burden of showing the arbitration agreement is procedurally unconscionable.

The court also finds that Seasons has not met its burden of establishing that the arbitration clause at issue is substantively unconscionable.  The PSA's arbitration clause provides that arbitration shall be conducted in accordance with AAA Rules, and in all other respects conducted in accordance with the Nevada Rules of Civil Procedure.  It gives the parties the right to engage in discovery in

accordance with the Nevada Rules of Civil Procedure. The second section of Paragraph 25 provides in capital letters and larger font size that by agreeing to have disputes decided by a neutral arbitrator as provided by Nevada law, the purchaser waives the right to litigate the dispute in court and to a jury trial. It contains a provision that the arbitration of disputes provision is voluntary, but the purchaser may be compelled to arbitrate under the Nevada Rules of Civil Procedure if the purchaser refuses to submit to arbitration after agreeing to it. The arbitration provision does not contain a waiver of any NRS Chapter 40 remedies. In short, the court finds the arbitration provision at issue is not so one-sided that it is substantively unconscionable.

### D.    Representative or Class Arbitration

The parties disagree about whether the decision to compel class arbitration is for the arbitrator or the court to decide. Seasons claims the decision is for the arbitrator, while Richmond argues it should be decided by the court. The decision and order entered by Judge Jones in *Greystone* left it to the arbitrator to decide whether the homeowners may arbitrate the claims of multiple homeowners in a single arbitration proceeding. The decision and order contains a single line deferring this issue to the arbitrator and does not contain a discussion or analysis of what the arbitration agreements at issue in that case provided concerning class or representative arbitration.

In this case, Seasons relies on the United States Supreme Court's decision in *Bazzle* to support its position that the arbitrator should decide whether arbitration language stated in singular rather than plural terms forecloses class arbitration. Seasons claims that the PSA in this case neither mandates, nor forbids, class or representative arbitration. However, it specifically refers to the AAA rules and the Nevada Rules of Civil Procedure, both of which permit representative or class arbitration.

Richmond argues that the Supreme Court's subsequent decision in *Stolts-Neilson* and *Concepcion* compel a contrary result. Specifically, Richmond argues that after *Stolts-Neilson* and *Concepcion*, it is clear that: (a) if the arbitration provision calls for class arbitration, then the matter should be submitted to class arbitration; (b) if the arbitration provision prohibits class arbitration, then the matter may not be submitted to class arbitration; and (c) if the arbitration provision is silent on class arbitration, then the matter may not be submitted to class arbitration. Relying on *Rent-a-Center,* Richmond contends that because Seasons is challenging the validity of the terms of the arbitration

agreement, and not the terms of the PSA as a whole, the court rather than the arbitrator should decide whether the arbitration agreement permits representative or classwide arbitration. 130 S.Ct. at 2776.

This is not a class action. Rather, Seasons filed this suit in its representative capacity as a homeowners association under Nevada law. Arbitration is a matter of contract, and a party cannot be required to submit a dispute to arbitration which it has not agreed to submit. *AT&T Techs, Inc.,* 475 U.S. at 648. Section 4 of the FAA allows a party aggrieved by another party's failure to arbitrate according to the terms of a written arbitration agreement to apply for a court order directing that the arbitration proceed as agreed. *Id.* The determination of whether parties agreed to submit a particular dispute to arbitration is generally an issue to be decided by the court, not the arbitrator. *Id*. However, the Supreme Court has held that where the parties themselves clearly and unmistakably agreed that the arbitrator should decide whether an issue is arbitrable, that issue is to be decided by the arbitrator. *Id.*

Here, Seasons opposes arbitration, arguing the arbitration clause of the PSA is unconscionable and therefore unenforceable. Seasons does not challenge the validity or enforceability of the PSA as a whole. However, if the court compels arbitration of the individual homeowners who signed PSAs requiring arbitration, Seasons asserts the arbitrator should decide whether the arbitrations should proceed on an individual or collective basis. *Stoltz-Nielson* and *Concepcion* address class action arbitration, not collective or consolidated actions. The arbitration clause in the parties' PSA requires arbitration in accordance with AAA rules and the Nevada Rules of Civil Procedure. Both sets of rules allow for consolidated proceedings. The court concludes that the question of whether arbitration should proceed on an individual or consolidated basis is a procedural question involving contract interpretation that is for the arbitrator to decide.

For all of the foregoing reasons,

**IT IS ORDERED** that:

1. Richmond's Motion to Compel Arbitration (Dkt. #25) is **GRANTED** to the extent the original homeowner members shall be compelled to arbitrate the claims asserted in this action.

2. Richmond's Motion to Compel Arbitration (Dkt. #25) is **DENIED** to the extent it seeks an order of the court requiring individual arbitrations.

3. This action is **STAYED** as to the original homeowner members pending arbitration.

Dated this 19th day of July, 2012.

                                                                                     _____
Peggy A. Leen
United States Magistrate Judge